## PECK v. KNAPP et al.

### (Supreme Court, Equity Term, Cayuga County. July 30, 1912.)

1. PARTNERSHIP (§ 244*)—DISSOLUTION—DUTY OF SURVIVING PARTNERS.

On a dissolution of a firm by the death of one of the partners, the surviving partners are charged with the active duty of liquidating the old firm's affairs with reasonable diligence, in order that the deceased partner's interest may be ascertained, conserved, and paid over to his personal representatives.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 511; Dec. Dig. § 244.*]

2. PARTNERSHIP (§ 301*)—DISSOLUTION—DEATH OF PARTNER—ACCOUNTING—VALUE OF DECEASED PARTNER'S INTEREST.

Plaintiff's deceased husband had owned a one-fourth interest in a partnership engaged in a publishing business, which was dissolved by his death in October, 1908. The business had been very successful, and in November following the surviving partners offered plaintiff, who was her husband's executrix and sole beneficiary, $15,000 for her husband's interest in the business, including real estate. This offer was declined, and no further steps taken to liquidate the business until the summer of 1909, when the surviving partners were offered $100,000 for the business, which they declined, saying that their interests as surviving partners were not for sale, and as a result of their inaction they lost the benefit of a sale at that price. Held, that plaintiff was entitled to an accounting, and to recover the value of her interest, figured on a basis of $100,000 for the entire business.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 698; Dec. Dig. § 301.*]

3. PARTNERSHIP (§ 301*)—DISSOLUTION—SALE OF ASSETS.

Where, after the dissolution of a firm by the death of one of the partners, an offer of $100,000 was made for the business, which the surviving partners promptly declined, and in which they manifested no interest, they could not successfully claim in a proceeding for an accounting that such offer should not be regarded as the value of the property, because the names of the proposed purchasers were not then disclosed.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 698; Dec. Dig. § 301.*]

4. PARTNERSHIP (§ 255*)—LIQUIDATION—SERVICES OF SURVIVING PARTNERS.

While in general surviving partners are not entitled to compensation for their services in liquidating the business of the firm, yet where, pending liquidation, it is necessary that the business be carried on in order to avoid great loss and to preserve a valuable good will, and it was the expectation of the personal representative of the deceased partner that the business would be conducted until an adjustment could be reached or the business advantageously sold, the surviving partners would be allowed compensation for their services so rendered, payable out of profits, during a reasonable time prior to securing an advantageous offer for a sale of the assets.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 552–561; Dec. Dig. § 255.*]

Action by Mary F. Peck, as executrix of Henry D. Peck, deceased, against Horace J. Knapp and others, for a partnership accounting. Judgment for plaintiff.

Underwood, Storke, Seward & Elder, for plaintiff.
Turner & Kerr (Hull Greenfield, of counsel), for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SUTHERLAND, J.  The controlling facts in this controversy may be briefly stated.  Henry D. Peck, the plaintiff's husband, died October 1, 1908, owning a one-fourth interest in the partnership of Knapp, Peck & Thompson, publishers of the Auburn Daily Advertiser and Auburn Journal, and owners of the job printing business connected therewith and the real estate on Genesee street in Auburn where the business was conducted.  The newspaper and job printing business had been carried on continuously by that firm and their predecessors since 1849, and was in fine condition and the good will of the business was of much value.  The profits had been large, and, with competent management, a continuance of business prosperity was well assured.

Since the death of Henry D. Peck, the business has been carried on by the three defendants, who are the surviving partners.  In November, 1908, the defendants offered the plaintiff, who is the executrix of her husband's will and sole devisee and beneficiary thereunder, $15,000 for her husband's interest in the business, including the real estate. This offer the plaintiff declined to accept, stating that she believed that interest to be worth much more; and, through her attorneys, she requested a full statement of the condition of the business, in order that she might be properly advised as to what course to pursue.  There was long delay in obtaining a full and satisfactory statement of the condition of the business.  It is not necessary to determine whether that delay was unreasonable, because the case is to be disposed of upon other grounds.

In the summer of 1909, some gentlemen of financial responsibility authorized Paul R. Clark, the postmaster of Auburn and a member of the bar of that city, to open negotiations for the purchase of the entire plant and business for $100,000.  Mr. Clark conferred with William H. Seward, Jr., on the subject, Mr. Seward being a member of the firm of attorneys who represented the plaintiff, and Mr. Seward had two interviews with Mr. Knapp, one of the defendants, in the first of which he told Mr. Knapp that he thought he could obtain a purchaser for the plant and business for $100,000, and asked Mr. Knapp if the three survivors would give an option on their interests on that basis, and Mr. Knapp refused, saying that their interests were not for sale.  Mr. Seward testifies that in that connection he called Mr. Knapp's attention to the fact that the surviving partners had only offered plaintiff $15,000 for her quarter, and refused to take $25,000 apiece for their respective interests, to which Mr. Knapp replied: "Our shares are worth more than hers, because we are alive."  Mr. Seward then stated that Mrs. Peck was just as much interested in the good will of the business as the surviving partners and entitled to whatever it was worth; but Mr. Knapp said she was not.  In the second interview, which occurred September 22, 1909, Mr. Seward told Mr. Knapp that he was authorized to and did offer $100,000 for the entire property and business as it stood October 1, 1908, when Henry D. Peck died, the unpaid accounts to be adjusted as of that date.  This offer was declined, Mr. Knapp again stating that the interests of the surviving partners were not for sale.  In written correspondence, also, between Mr. Seward and the defendants, the offer was called to their

attention, and the defendants replied that the interests of the surviving partners "are not for sale."

Mr. Seward declined to give the name of the proposed purchasers to Mr. Knapp, stating that they did not care to be known unless their offer was accepted. Later the defendants obtained legal counsel, who communicated with Mr. Seward's firm, and the negotiations for the purchase at $100,000 were reopened between Mr. Seward and Mr. Clark, and an attempt was made by Mr. Seward to obtain from the three surviving partners an option, running to Mrs. Peck, individually and as executrix, to purchase the three interests of the surviving partners for $75,000. This option they declined to sign, their counsel stating they did not care to give options to Mrs. Peck, as she was only an agent for others, with whom they preferred to deal directly, and also stating that the defendants and their counsel understood that the proposition to buy for $100,000 did not cover any of the unpaid accounts; and the defendants virtually offered to sell their interests on the basis of $100,000, reserving the accounts, which offer was declined, as the understanding had all along been between Mr. Clark and Mr. Seward that the proposition to purchase for $100,000 included the outstanding accounts, which amounted to a large sum and would serve as a tie binding the old customers to the new firm, and thereupon the negotiations for the sale to persons represented by Mr. Clark came to an end.

[1, 2] There was much correspondence between the parties and their attorneys, which it is not necessary to review further. The facts stand out in bold relief that the surviving partners, although they were charged by the law with the active duty of proceeding with reasonable diligence to a liquidation of the business of the old firm, in order that the plaintiff's interest might be fully conserved and paid over to her, did nothing upon their own initiative toward that end, except to offer her $15,000 for her interest. They declined a bona fide offer of $100,000 for the firm assets, but took no steps toward finding a purchaser for a greater amount, and did not offer to the plaintiff her proportionate equivalent for the offer which they thus refused.

As a result of their inaction and refusal to consider favorably the proposition made through Mr. Seward, the plaintiff has lost the benefit which would have accrued to her through such a sale at $100,000. It is very doubtful if the plant could now be sold for that amount. Damage to plaintiff is thus directly attributable to the failure of the defendants to perform their duty as liquidating trustees under the law; and for the breach of that duty and the consequent loss to this plaintiff the defendants are liable. This action was commenced in April, 1910. In the fall of 1911, when the case had been placed upon the calendar for trial, defendants offered plaintiff $20,000 for her interest, in addition to about $2,300 which she had withdrawn from time to time; defendants retaining all other profits earned during the three years succeeding the death of plaintiff's husband. This offer was declined.

[3] The plaintiff and her counsel are now criticised because the name of the proposed purchaser was not revealed to the defendants;

but the criticism is without much force, because the names would have been at once revealed to them if defendants had expressed their willingness to accept the terms offered, and when information came to them through Mr. Seward of an opportunity to sell at an advantageous figure it was incumbent upon the defendants to exhibit some interest in the proposition and at least to meet the proposal in the spirit of men responsive to their duty to protect the estate of the deceased partner. The excuse is now given upon the stand by one of the surviving partners that the price offered, $100,000, was so much greater than the actual value of the property that he did not take the offer seriously. That, however, will hardly suffice.

The plaintiff is entitled to ultimate indemnity against the loss that would come to her by reason of the failure of the defendants to perform their legal duty in the premises. She must at the end of the liquidation receive the $25,000 which would have been paid to her had the sale gone through, together with interest from October 1, 1909, less such moneys as were paid over to her after her husband's death, and less whatever balance stood against her husband on an adjustment between him and his partners at the date of his death. In addition, for the year October 1, 1908, to September 30, 1909, she is entitled to a fair share of the profits of the business.

[4] The general rule undoubtedly is that surviving partners are not entitled to anything for their services in liquidating the business of the firm. But here was a business which, pending liquidation, had to be carried on in order to avoid great loss; for if the doors had been locked, and the publication of the papers suspended, the good will of the business, which is a large factor in its value, would have been practically destroyed. The plaintiff and her counsel expected the business to be continued until an adjustment could be reached or the business could be advantageously sold; and there is nothing to warrant a finding that an advantageous sale could have been effected earlier than the fall of 1909. The plaintiff, therefore, must be deemed to have consented to a continuance of the business for that first year.

The rule denying compensation to surviving partners for liquidating the firm business does not forbid equitable allowances for services rendered by the surviving partners in carrying on the business, where it is continued with the consent of the personal representatives of the deceased, payable out of the profits earned during such continuance. Burgess v. Badger, 82 Hun, 488, 31 N. Y. Supp. 614; Robinson v. Simmons, 146 Mass. 167, 15 N. E. 558, 4 Am. St. Rep. 299. Therefore I think an allowance should be made in favor of the defendants for editing the papers and running the business for that year.

In November, 1908, the surviving partners voted themselves salaries of $2,000 each per annum, to commence October 1st, the date of Henry D. Peck's death. This was not done with the consent of the plaintiff, and the arbitrary amount fixed by them would not control; but it does not seem to me that $2,000 each is an excessive amount to allow the three surviving partners for the year ending September 30, 1909, to be paid out of the profits for that year. The plaintiff is entitled to receive one-fourth of the remainder of that

year's profits. As a sale should have been made by October 1, 1909, no allowance can be granted for services rendered by the surviving partners in carrying on the business subsequent to that date.

Other matters of minor importance are to be considered, and the exact state of the accounts determined in the findings. The intention of the court is to indemnify the plaintiff to the full amount which she would have received, had the sale gone through which the defendants, in violation of their duty, refused to make. This being assured, the court is ready to afford to the defendants every reasonable opportunity to bring the matters of the firm to a liquidation, or to purchase the interest of the plaintiff at that figure, subject to the equalizations referred to, which seems to be permissible under section 1947 of the Code of Civil Procedure.

Counsel may prepare findings, and will be heard upon a settlement thereof, and as to the form of an interlocutory decree, on five days' notice. The plaintiff will be allowed costs of the action.